The judgment is reversed, and the cause remanded, with direction to grant a new trial.

We concur: LONG, C. J.; REEVES, J.

---

## BUTTS *et al. v.* WOODS.

*(Supreme Court of New Mexico.* January Term, 1888.)

1. REPLEVIN—WHEN LIES—PROPERTY TAKEN ON ATTACHMENT—RIGHTS OF CLAIMANT.
 Under Comp. Laws N. M. 1884, § 1975, providing that "no cross-replevin, or replevin for property in the hands of an officer, shall be brought," property seized by an officer under attachment process cannot be recovered in replevin by a third person claiming the right of possession.

2. SAME—DAMAGES—ADMISSION IN PLEADING.
 Where, in replevin, the court finds for defendant, and proceeds to try the question of damages to a jury, it is proper to permit defendant to read in evidence the allegation in the affidavit on which the writ issued of the value of the property, and plaintiff is estopped from denying the value so alleged. LONG, C. J., dissenting.

Appeal from district court, Grant county; WILLIAM F. HENDERSON, Judge. *John J. Bell,* for appellants. *John D. Bail,* for appellee.

BRINKER, J. This was a suit in replevin brought by plaintiffs against the defendant as sheriff of Grant county, in which plaintiffs claimed the right to the immediate possession of certain personal property, described in the declaration and affidavit, and alleged to be of the value of $1,000, and for damages. Upon this declaration and affidavit being filed, and a bond given as required by law, a writ of replevin was issued and duly served. Defendant appeared and filed a plea of not guilty, and the question of plaintiffs' right to the possession of the property was tried by the court upon an agreed statement of facts. The court found that issue for defendant. Thereupon the question of defendant's damages under section 1981, Comp. Laws, was tried by a jury, and the damages assessed at the sum of $955, the value of the property; and the defendant having elected to take such value in lieu of the property, judgment was rendered against plaintiffs and the sureties on the replevin bond for that amount. Plaintiffs bring the case here by appeal.

The agreed statement was as follows: "(1) It is hereby agreed in open court that the defendant, James B. Woods, is now, was at the time, and long before the commencement of this action, the duly elected and qualified sheriff of Grant county aforesaid. (2) That the property herein replevied by the plaintiff was replevied from the said James B. Woods as such sheriff. (3) Said defendant sheriff held the same at the time said property was replevied from him by the plaintiff under and by virtue of successive writs of attachment duly issued by JOHN S. RILEA, justice of the peace, who had full jurisdiction in the premises to issue said writs of attachment; that they were issued on behalf of and on application of various creditors of John Brown and Thomas Smith, whom the defendant claimed and showed by his return on said served writs were at the time of the levy aforesaid the owners of said property. It is also admitted said writs of attachment were legally issued on behalf of said creditors, and due return was made thereof by said defendant sheriff; that he duly seized said property under and by virtue of said writs as the property of John Brown and Thomas Smith, debtors aforesaid. No question is herein made denying the jurisdiction of said justice of the peace to issue said writs, or denying the validity of the same. (4) The property so replevied from the defendant sheriff by the plaintiff was taken by a special officer whom it is conceded was duly

appointed for that purpose and according to law, and the writ of replevin placed in the hands of said special officer is in all respects regular and legal. (5) That the property herein referred to is the same property described in the declaration in replevin, which declaration, affidavit, writ, and return it is agreed shall go up with the records in the cause. (6) It is further agreed that the return-day of said writs of attachment, and on the day assigned for trials in the said justice's court, and at the hour and time fixed for said trials, the plaintiffs herein were present, and tendered their pleas of intervention in said court, setting forth, among other things, in said pleas, that said John Brown and Thomas Smith, nor either of them, were the owners of said property at the time of the issuing of said writs of attachment, but was the property of these plaintiffs. (7) That the said plaintiffs then and there asked that they be made parties, and that their rights to said property be adjudged and determined, which application and request was refused by said justice, to which refusal said plaintiffs entered their protests. (8) It is also agreed that the aggregate value of the property so replevied by the plaintiffs exceeds the sum of $100. (9) The plaintiffs, at the time of the issuing of said writs of attachment, claimed that they were the owners of and entitled to the immediate possession of said property, and still claim that they are the owners of and entitled to the immediate possession thereof. (10) It is admitted that the plaintiffs, nor either of them, are indebted to any of the creditors aforesaid, who sued out the attachments aforesaid, and never have been."

Upon the inquiry of damages, the defendant read in evidence the affidavit filed by plaintiffs, to prove the value of the property, and rested. Plaintiffs then asked the court to instruct the jury that defendant had proved no damages or value of the property, and that they could only allow him nominal damages. This the court refused, and plaintiffs excepted. Plaintiffs then offered to prove that the value of the property was less than the value stated in the affidavit. To which defendant objected, on the ground that plaintiffs were estopped from denying the value placed upon the property in the affidavit. This objection was sustained and plaintiffs excepted.

The plaintiffs having sworn in their affidavit upon which the writ of replevin was issued that the property was worth $1,000, and having distinctly alleged the same fact in the declaration, it would have been competent for the court to have instructed the jury that that fact was admitted. This, however, was not done directly, but the same result was reached by permitting defendant to read the affidavit to the jury, and refusing to allow plaintiffs to introduce evidence tending to prove their own solemn statements to be false. There was no error in this. 1 Greenl. Ev. § 27.

The vital question in this case is: Can property in the hands of an officer by virtue of a valid writ of attachment be recovered in a replevin suit brought by a third person claiming the right of possession? The solution of the question depends upon the construction of sections 1974, 1975, Comp. Laws 1884. The first authorizes any person having a right to the immediate possession of any goods or chattels wrongfully taken or wrongfully detained to bring an action of replevin for their recovery, and for damages sustained by reason of the unjust capture or detention. The next provides that "no cross-replevin, or replevin for property in the hands of an officer, shall be brought." The first section gives the right to this remedy generally, and, if viewed alone, there is no exception; but the next section would seem clearly without the aid of construction to ingraft upon such right an important exception. Its terms are clear and full. No ambiguous language is used, and the answer to the question above stated would appear to be obvious from a glance at the statute.

But notwithstanding this, it is contended that a proper interpretation will confine its operation to prohibiting cross-replevins only. While it is not so stated in the brief of appellants, it may be inferred from their line of argument that the section consists of two clauses, and that the second clause is a

mere amplification of the first, or added by way of emphasis; that it is the same proposition stated in different language, but with one purpose; and that the section might be paraphrased thus: "No cross-replevin, that is, no replevin for property in the hands of an officer taken under a writ of replevin, shall be brought." Will the section bear this interpretation? If regard is had to the language used, and if the legislative intent is to be ascertained from that language, and the ordinary sense and meaning given to the words, no such liberty can be indulged. It must be presumed that the legislature understood the meaning of the language used, and it must be also presumed that its members had in mind the evil sought to be remedied; and if it had intended to only prevent a defendant in a replevin suit from defeating the writ by taking the property under another writ, why use words which by construction in the court might defeat the legislative will? To adopt the view thus supposed to be entertained by appellants is to eliminate from the statute more than half of the section. This cannot be done if the meaning can be ascertained without it. Lord Coke says: "The best expositor of all letters patent and acts of parliament are the letters patent and the acts of parliament themselves, by construction and comparing all the parts of them together." "It is a cardinal rule," says Sedgwick, "that, in the construction of a statute, effect is to be given, if possible, to every clause and section of it." Sedg. St. & Const. Law, 199–201. See, also, section 1851, Comp. Laws 1884.

Applying this rule, the meaning of the legislature is found to be inconsistent with appellants' position, but in harmony with the purpose expressed by all the words used. Similar statutes have been so construed in other jurisdictions. *Hershey* v. *Institute*, 15 Ark. 128; *Spring* v. *Bourland*, 11 Ark. 658; *Saffell* v. *Wash*, 4 B. Mon. 92.

In *Spring* v. *Bourland*, the statute of New York is quoted, and it is said that the cases decided upon that statute do not apply. So I conclude that both upon principle and very respectable authority the legislative intent may be held to be co-extensive with the words used, and if those words will prohibit the appellants from maintaining the cause, in this form, the remedy lies not with the courts, but with the law-making branch of the government. This statute, although passed long before the common law was in force in this territory, is but declaratory of a well-recognized common-law rule.

In *Smith* v. *Huntington*, 3 N. H. 76, RICHARDSON, C. J., says: "The rule of the common law is that replevin does not lie of goods in the custody of the law," and quotes from the judgment of PARSONS, C. J., in *Ilsley* v. *Stubbs*, 5 Mass. 283, with approval, the following: "Chattels in the custody of the law cannot at common law be replevied, as goods taken by distress upon a conviction before a justice, or goods taken in execution, and, by parity of reason, goods attached by an original writ as security for the judgment cannot be replevied;" and concludes that no case can be found except *Thompson* v. *Button*, 14 Johns. 84, where replevin has been held to lie, at common law, of goods in custody of the law; citing Co. Litt. 145*b*; *Pangburn* v. *Patridge*, 7 Johns. 140; 1 Chit. Pl. 159; Bull. N. P. 53; Willies, 672, note; *Rex* v. *Monkhouse*, 2 Strange, 1184; *Pritchard* v. *Stevens*, 6 Durn. & E. 522; *Fletcher* v. *Wilkins*, 6 East. 283. To the same effect is *Raiford* v. *Hyde*, 36 Ga. 93.

If the position that both clauses of the section express but one purpose could have been maintained before the adoption of the common law, from that time forward I have no doubt that the statute, taken in connection with the common law, would have forbidden this proceeding. The agreed statement concedes the validity and regularity of the writ, and the seizure and possession under it. This concession brings the case fully under the prohibition both of the statute and the common law.

Appellants say that by the language of the form of the affidavit set out in section 1987, Comp. Laws, the legislature clearly intended to authorize replevin for goods taken by an officer from a third person; quoting from the

form the words in parentheses, "or was illegally seized," and contend that those words have a well-defined legal meaning, and that that meaning applies solely to property wrongfully seized by an officer. No authorities are cited to sustain this position, and none have been found. In the absence of authority it is not perceived why a seizure could not be illegal if perpetrated by any one. This section was enacted in 1868 (Acts 1868, c. 16, § 2) in Spanish, and the words quoted are translated into English. Section 2615, Comp. Laws, provides that in the construction of statutes the language in which the law was originally passed shall govern. The word "seized" in the translation is "tomada" in the original. "Tomada" is the past participle of the regular verb "tomar," which in its primary and general sense means "to take." Seoane's Neuman & Baretti, Spanish Dict. 622, pt. 1. It is true this word is broad enough to include "to seize," but that is not its ordinary sense, and it has no such technical meaning. The verb "to seize" in Spanish is "embargar," and the past participle "seized" is "embargada." But when it is intended to express the idea of a seizure of goods or effects in a legal sense a clause is used fully and clearly expressing the purpose. Id. 462, pt. 2. From this it will be seen that this point must be resolved against appellants.

The last contention is that the court erred in giving judgment against the sureties on the replevin bond for the value of the property. This is sufficiently answered by the statute, § 1981.

Finding no error in the record, the judgment should be affirmed, and it is so ordered.

I concur: REEVES, J.

I dissent: LONG, C. J.

HENDERSON, J., having presided in the court below, did not sit.